IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES DAWSON,

  Plaintiff,

v.           CASE NO. 4:16cv775-RH/CAS

FLORIDA DEPARTMENT OF
TRANSPORTATION,

  Defendant.

_____/

**ORDER REDUCING THE AWARD FOR LOST
WAGES, OTHERWISE DENYING THE MOTION
FOR JUDGMENT AS A MATTER OF LAW OR
NEW TRIAL, AND ORDERING REINSTATEMENT**

  A jury found that the defendant state agency suspended and then fired the plaintiff because of his race. The defendant has moved for judgment as a matter of law, for a new trial, or to remit the award of lost wages. This order remits the award of lost wages to account for the plaintiff's earnings from other employment after the firing. The order denies the remainder of the motion. The order requires the defendant to reinstate the plaintiff on equitable conditions.

I

On a motion for judgment as a matter of law, disputes in the evidence must be resolved, and all reasonable inferences must be drawn, in favor of the nonmoving party. The motion must be denied if a reasonable jury could return a verdict for the nonmoving party. *See, e.g.*, *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1130 (11th Cir. 2017). On a motion for a new trial, in contrast, the court may consider the weight of the evidence. But new trials are disfavored; a court should grant a new trial only if "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016).

II

The plaintiff James Dawson climbed the ranks in the Florida Department of Transportation through a 25-year career. He became a "white-shirt supervisor" in a regional office, responsible for a crew that repaired roads and provided attendant services. He was, by all accounts, good at his job, or at least knowledgeable about road repair and about how to perform the tasks entrusted to his crew.

Two problems arose. First, there was racial antagonism in the regional office. Second, there was a lack of civility and cooperation in the office, especially between Mr. Dawson's crew and at least one other crew, perhaps related to the

racial antagonism, perhaps not. Different combinations of managers suspended and, about a week later, terminated Mr. Dawson, giving different explanations.

The Department says the termination was a response to the lack of civility and cooperation in the office. But only Mr. Dawson was terminated; the manager of the other crew was not. Mr. Dawson says the reason for the different treatment was race: Mr. Dawson is African American; the other manager is white. The Department says the treatment had nothing to do with race—that Mr. Dawson was terminated because he was the cause of the problem.

In sorting this out, the jury was entitled to consider other circumstances. Mr. Dawson suffered curious treatment—perhaps just the result of poor management, but perhaps caused by racial bias. Thus, for example, he arranged to acquire concrete that was needed to repair an on-ramp to an interstate highway before it collapsed. He did this while the region's warehouse supervisor—the person who ordinarily did the ordering—was unavailable. The concrete was needed; Mr. Dawson acquired it from the same vendor at the same price as the warehouse supervisor would have done had she been available; and Mr. Dawson had routinely followed this same procedure on other occasions without objection. But this time Mr. Dawson was treated as a villain. This occurred shortly before Mr. Dawson's suspension and termination.

racial antagonism, perhaps not. Different combinations of managers suspended and, about a week later, terminated Mr. Dawson, giving different explanations.

The Department says the termination was a response to the lack of civility and cooperation in the office. But only Mr. Dawson was terminated; the manager of the other crew was not. Mr. Dawson says the reason for the different treatment was race: Mr. Dawson is African American; the other manager is white. The Department says the treatment had nothing to do with race—that Mr. Dawson was terminated because he was the cause of the problem.

In sorting this out, the jury was entitled to consider other circumstances. Mr. Dawson suffered curious treatment—perhaps just the result of poor management, but perhaps caused by racial bias. Thus, for example, he arranged to acquire concrete that was needed to repair an on-ramp to an interstate highway before it collapsed. He did this while the region's warehouse supervisor—the person who ordinarily did the ordering—was unavailable. The concrete was needed; Mr. Dawson acquired it from the same vendor at the same price as the warehouse supervisor would have done had she been available; and Mr. Dawson had routinely followed this same procedure on other occasions without objection. But this time Mr. Dawson was treated as a villain. This occurred shortly before Mr. Dawson's suspension and termination.

Management solicited statements from employees criticizing Mr. Dawson's performance. But some African American employees were not asked for a statement. Testimony about the manner in which the statements were solicited was plainly false in some respects—false in sufficient respects to create a "suspicion of mendacity." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993). Management used the statements as the primary basis for Mr. Dawson's termination.

The jury answered interrogatories explicitly finding that race was a motivating factor in Mr. Dawson's suspension and termination and that he would not have been suspended or terminated if race had not been considered. The evidence of this was less than overwhelming; the jury could also have found that Mr. Dawson was suspended and terminated for the legitimate reasons the Department proffered. This was, in short, a jury question. The Department is not entitled to judgment as a matter of law.

<div style="text-align:center">III</div>

This was not a perfect trial—few are. But it was a fair trial. There is no reason to believe a new trial would produce a different result.

The Department complains of evidentiary rulings, but the rulings were correct—the same rulings would be made again in a new trial. The Department


also complains of an ambiguous and fleeting remark in Mr. Dawson's attorney's closing argument. The attorney said the jury would not be asked to decide whether Mr. Dawson should get his job back—"that's not part of this process." The Department made no contemporaneous objection. This remark was an inconsequential part of the trial; it did not affect the verdict.

In sum, the issues were close, and the losing side is dissatisfied, as the losing side usually is. As a matter of discretion, I deny the motion for a new trial.

## IV

Mr. Dawson sought and obtained other jobs after his termination. The new jobs paid less than Mr. Dawson's job with the Department and were not permanent. Mr. Dawson was entitled to recover lost salary reduced by his earnings from the new jobs. But the jury failed to deduct $9,031.50 in earnings from the new jobs. Mr. Dawson has acknowledged that a remittitur in this amount is proper, and he has agreed to accept it.

The Department asserts the award for lost salary should be further reduced based on Mr. Dawson's failure to mitigate damages by continuing in the new jobs longer than he did. But the jury was properly instructed on mitigation and was entitled to find that Mr. Dawson worked for as long as he could. The Department is not entitled to a further reduction of the lost-salary award.

V

An employee who is terminated in violation of a federal civil-rights statute ordinarily is entitled to reinstatement. Indeed, reinstatement, rather than front pay, is the preferred forward-looking remedy. *See, e.g.*, *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435 (11th Cir. 1985). Mr. Dawson is entitled to reinstatement.

That Mr. Dawson is receiving social-security disability benefits does not change this conclusion. He is receiving benefits not based on a finding that he is unable to work but because he has a listed condition—a condition that, under the governing statute and rules, entitles him to benefits without regard to ability to work. As the factfinder on the issue of equitable relief, I find that Mr. Dawson is able to perform the essential functions of his former job—as well as other Department jobs—and that reinstatement under the terms of this order will not adversely affect the Department's interest in maintaining an able, cooperative workforce.

Reinstatement is an equitable remedy. This order vindicates Mr. Dawson's rights by requiring the Department to reinstate Mr. Dawson to an appropriate position—but not necessarily his same position (which has been filled) or even a position in the same regional office. If the Department does not offer Mr. Dawson

his same position or an equivalent position in the same regional office, the order gives Mr. Dawson the option of accepting one year of front pay in lieu of reinstatement.

VI

For these reasons,

IT IS ORDERED:

1. The Department's motion for judgment as a matter of law, a new trial, or remittitur, ECF No. 67, is granted in part and denied in part. Judgment as matter of law and a new trial are denied. A remittitur is granted.

2. By May 4, 2018, the attorneys for Mr. Dawson and the Department must confer in a good-faith effort to identify a position into which Mr. Dawson may be reinstated or the reinstatement obligation may otherwise be satisfied. If the parties do not agree, the parties must comply with paragraphs 3 through 10 below.

3. By May 18, 2018, the Department must notify Mr. Dawson of one or more appropriate positions into which the Department is willing to reinstate him. An appropriate position means a position with the same or higher earnings and benefits (either as a matter of course or as increased for Mr. Dawson to comply with this order) and with reasonably comparable responsibilities and required skills as the position held by Mr. Dawson prior to his termination.

4. The Department's notice must identify an appropriate position in the Department's Chipley or Midway office if an appropriate position is open in either of those offices at any time between the date of this order and May 18, 2018.

5. If the Department's notice does not identify an appropriate position in the Chipley or Midway office, then (a) the Department's notice must identify at least two appropriate positions within 60 miles of Bristol, and (b) Mr. Dawson may elect to receive one year of front pay in lieu of reinstatement.

6. To accept a position listed in the Department's notice, Mr. Dawson must notify the Department of his acceptance. The deadline for Mr. Dawson to give notice is 14 days after the Department's notice. The Department must place Mr. Dawson in the accepted position within 14 days after the notice of acceptance.

7. If Mr. Dawson accepts a position that is not in the Chipley or Midway office, or Mr. Dawson elects front pay in lieu of reinstatement, and if on or before May 17, 2019 an appropriate position comes open in the Chipley or Midway office, the Department must notify Mr. Dawson of the opening. The deadline for giving notice of the opening is 14 days after the Department learns the position is or will be open—and the deadline thus may be before the position is open. Within 14 days after the Department gives notice, Mr. Dawson may give notice to the Department that he accepts the position. The Department must place Mr. Dawson

in the accepted position within 14 days after the notice of acceptance. If Mr. Dawson has been receiving front pay, it will end as of the date on which Mr. Dawson is placed in the accepted position.

      8. The Department must not terminate Mr. Dawson from an accepted position without good cause based on events occurring after the reinstatement.

      9. The Department must restore Mr. Dawson's retirement benefits as fully as if he had not been terminated and had instead been continuously employed through the date on which he is reinstated or his front pay benefits end.

      10. Any notice under this order must be in writing—either hard copy or electronic—and must be delivered to the opposing party's attorney of record in a manner ensuring that it will be received on the date of the notice.

      11. The clerk must enter an amended judgment that reduces the award for lost salary by $9,031.50 and that includes the injunction set out in paragraphs 2 through 10 above.

      SO ORDERED on April 19, 2018.

                                        s/Robert L. Hinkle
                                        United States District Judge